**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DAVID L. BRANTON,**

    **Plaintiff,**

v.                                             Case No. 8:07-cv-1811-T-30TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                  /

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.[1] Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was 56 years of age at the time of his administrative hearing on August 2, 2005.[2] He stands 6' 1" tall. Plaintiff has a high school education. His past work was as a security systems monitor, junior assistant manager for a grocer, drill operator and helper,

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

[2]For the period at issue in this case, Plaintiff was 42-49 years of age.

construction laborer, and sanitation engineer. Plaintiff initially applied for disability benefits and disability insurance on February 12, 1992, and he applied for Supplemental Security Income ("SSI") payments on August 20, 1992. He alleges disability as of April 30, 1991, by reason of a bulging lumbar disc, degenerative disc disease, osteoarthritis in the lumbar spine, and high blood pressure. Plaintiff's applications were denied originally, on reconsideration, and by order of an Administrative Law Judge ("ALJ") on January 27, 1994.[3] Plaintiff appealed the unfavorable decision to the district court, and on August 27, 1997, the case was remanded to the Commissioner for further consideration. (R. 165-66). The Appeals Council thereafter vacated the decision and remanded the case for a new hearing. (R. 180-81). On April 21, 1999, the ALJ dismissed the claims on a finding that the claimant had abandoned them. (R. 187-88). On an appeal lodged with the Appeals Council, the case was remanded for further consideration. (R. 201-04).

The *de novo* hearing on remand was conducted on August 2, 2005. Pertinent to the issues was Plaintiff's date last insured for disability benefits, December 31, 1996. At the outset of the hearing, Plaintiff's counsel advised the ALJ that Plaintiff was only pursuing a

---

[3]An administrative hearing was held in Ocala, Florida, on October 22, 1993. Plaintiff was forty-five years old at the time. He had last worked in April 1991 as a junior assistant manager of a Winn-Dixie grocery store. He stopped working due to painful back problems. He also suffered painful varicose veins in his right leg. According to Plaintiff, he could no longer work at any job because of back and hip pain and problems with bending and walking. He had limited ability to stand and sit without pain. He could lift 20 pounds. Medication did not help much with the pain. Plaintiff mainly just sat around the house and watched television and read. No other witnesses were called to testify. (R. 126-37). By his decision, the ALJ found that, despite the fact that Plaintiff was unable to perform his past relevant work as a construction worker, grocery manager or drill operator, he was capable of a limited range of light work and a full range of sedentary work. Using the grids as a framework for decision, the ALJ concluded that Plaintiff was not disabled. (R. 7-15).

2

closed period of disability from April 30, 1991, through October 31, 1998, when he returned to work.

In essence, Plaintiff testified he was unable to work during the pertinent period due to back pain. Plaintiff has a high school education and vocational training. He can read, write, make change, and do simple math. Prior to November 1998, the date Plaintiff last worked was April 30, 1991, at which time he was working for Winn Dixie as a junior assistant manager. During the seven years he worked for Winn Dixie, Plaintiff held other positions such as produce manager, dairy frozen food manager, and desk clerk. All of the jobs involved unloading and stocking merchandise. Prior to working for Winn Dixie, Plaintiff worked as a drill operator from approximately 1978 through 1984. His position as a drill operator was very physical and involved heavy lifting, drilling, and pouring concrete. At the time of the hearing, Plaintiff was working as a security guard.

Plaintiff had a motor vehicle accident in 1989, which triggered his back injury. Plaintiff tried to work, but he frequently would miss work due to his back pain, and he reached a point where he could no longer perform his job duties. Plaintiff eventually was terminated from his position at Winn Dixie. At that point, the pain in his low back and right hip, along with pain down the right leg, would cause him to be unable to get out of bed for as long as two weeks, up to two times a month. Plaintiff would lie down, take medication or try to stretch in an effort to relieve the pain. The pain precluded him from bending over at the waist; he also complained of problems lifting and sitting. He estimated that he could sit for only 15 to 20 minutes before he had to get up and move around. Similarly, he was able to stand for only 20 to 30 minutes before feeling pain. He could walk for 15 to 30 minutes

3

before having to take a break. Following his 1989 accident and before he left his job in 1991, he missed a lot of work and was often in pain many days. Plaintiff used to take care of all the outside chores before his accident. After the accident, he relied on family and friends.

Following his termination from Winn Dixie, Plaintiff applied for other jobs and attended vocational rehabilitation training programs, but to no avail. Because of the injuries from his accident, Plaintiff was unable to return to the type of work he had done because of the required bending, heavy lifting, and standing. He tried a vegetable processing job at a factory, but was only there three to four months because he was physically unable to do the work. Thereafter, he saw an advertisement for a security guard training class; he attended the class, passed the exam, and they wanted to put him to work immediately.

In response to the ALJ's questioning, Plaintiff testified that he works a daytime shift. He is in an air-conditioned control booth where he monitors security screens. He can sit or stand and stays in the control center. He has been performing the security guard job full-time since 1999.

During the time he was unemployed (1991 through 1998), Plaintiff supported himself by using his profit sharing and selling his Winn Dixie stock. Additionally, he received a $15,000 settlement of his personal injury lawsuit for the 1989 accident. Plaintiff testified that he was also involved in two other accidents following the 1989 accident. The ALJ questioned the Plaintiff about a chiropractor's records, which referenced the most recent accident of 1995 and noted that Plaintiff was asymptomatic prior to the 1995 accident. Plaintiff had no explanation for that statement in his medical records.

Plaintiff testified that he still has pending medical bills, denying that he had any health insurance. From 1991 until 1998, Plaintiff took prescription pain medication which provided temporary relief. He was getting the medication through county assistance. He did not have any side effects aside from those he had from his high blood pressure medication. Plaintiff testified that it was a combination of some physical improvement and finding a job that was compatible to his requirements and limitations that allowed him to return to work. Specifically, Plaintiff testified that his pain was no longer as "excruciating." At the time of the hearing, Plaintiff was not treating regularly with a doctor and was not taking pain medication. The last time Plaintiff saw a doctor was a year before the hearing. At that time, x-rays were taken and Plaintiff was told he had arthritis in his lower back and prescribed pain medication. (R. 307-37).

Next, the ALJ took testimony from Gerald Wili, a vocational expert ("VE"). The VE testified that Plaintiff's prior relevant work included heavy exertional and semi-skilled work as a drill operator and medium exertional and skilled work as a grocery or retail department manager. However, the VE noted that Plaintiff testified that his work at the grocery store involved carrying and moving many boxes, which would make it a heavy exertional position. With regard to the relevant work history for the SSI application, it included Plaintiff's job as a surveillance systems monitor, which was unskilled, sedentary exertional work. On an assumption of a right-handed individual under the age of 50, with a high school education and the same work history as the Plaintiff, capable of a limited range of light exertional work that did not require more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, or overhead reaching, the VE opined that such a person could not perform the

5

medium to heavy exertional jobs that Plaintiff had performed previously. However, if the security guard position was considered, as it should for the SSI application, then the Plaintiff could perform that job given the limitations in the hypothetical. Additionally, the VE testified that given the hypothetical, such a person could perform 90% of the jobs in the light exertional category in the local and national economy, such as fast food worker, sales attendant and cashier II. If such person could only do sedentary exertional work with the same restrictions, the VE opined that the such person still could perform the security job, as well as work including that of a telemarketer, solicitor, or appointment clerk. However, with the added limitation of the need for two to three breaks of fifteen minutes each, in addition to regularly scheduled breaks, such person would not be able to maintain regular competitive employment. Additionally, if such person could not sit for six hours, the VE testified that Plaintiff would be unable to perform the sedentary positions. (R. 338-43).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of November 9, 2005, the ALJ determined that while Plaintiff has severe impairments related to lumbar disc disease and chronic low back and leg pain, and non-severe impairments related to high blood pressure and varicose veins at times pertinent to the decision, he nonetheless had the residual functional capacity, to perform a limited range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that for the period April 30, 1991, through October 31, 1998, Plaintiff could perform his past relevant work as a security monitor (for supplemental security income purposes) and work

that exists in significant numbers in the national economy (for disability insurance benefits purposes). Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 150-63). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton*

*v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises a single claim on this appeal. Thus, Plaintiff urges that the ALJ violated the Eleventh Circuit "pain standard." (Doc. 15). More particularly, Plaintiff argues

that evidence from his treating doctors and chiropractors, as well as other objective evidence,[4] supports the level of pain he experiences. Further, Plaintiff urges that the reasons given by the ALJ for discounting his pain complaints are "inadequate." In light of the overwhelming evidence, Plaintiff urges a remand for an award of benefits is warranted. (Doc. 15 at 14-16).

In response, the Commissioner urges that the ALJ's conclusion that Plaintiff's lumbar degenerative disc disease was a severe but not debilitating condition is fully supported by the record. More particularly, he urges that the ALJ's findings as to Plaintiff's subjective complaints were made in accordance with the applicable standards and fully supported by the evidence. Contrary to Plaintiff's argument, neither the objective evidence nor the clinical findings of his doctors supported that the limitations from his back impairment disabled him from all employment. (Doc. 16 at 6-13).

Plaintiff is correct that subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported

---

[4]In support, Plaintiff cites the June 1994, radiology report of R. De Girolami, M.D., (R. 205), reflecting findings of degenerative disc disease at L-4 through S-1, bulging annuli at L-4 L-5 and L-5 S-1, mild bilateral foraminal encroachment at L-4 L-5 and L-5 S-1, and mild bulging annulus at L-2 L-3 with effacement of the ventral subarachnoid sac. Plaintiff also cites to a summary of medical records completed by his attorneys. (R. 293-94).

9

by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012. Here, a fair reading of the decision reflects that the ALJ understood and applied this standard in consideration of Plaintiff's subjective testimony. Further, the numerous reasons noted by the ALJ for discounting Plaintiff's subjective testimony are more than amply supported by the record. In short, Plaintiff makes no demonstration that the ALJ failed to abide by this standard or that a remand is in order on this claim.

As the decision reflects, the ALJ fairly reviewed the medical record, the objective test results, including the radiology report from Dr. De Girolami, as well as the opinions of Plaintiff's treating and examining doctors before arriving at his residual functional capacity assessment. In reference to Plaintiff's subjective complaints, consistent with the "pain standard," the ALJ first credited Plaintiff with lumbar degenerative disc disease and noted, "[t]he evidence does establish the presence of an underlying impairment that reasonably could be expected to produce the symptoms alleged." (R-159). However, the ALJ discounted the testimony to the extent that Plaintiff claimed total disability as "inconsistent with the evidence of record." (R. 158). In this latter regard, the ALJ expressly cited to the assorted objective records, the clinical findings of the examining doctors and treating doctors, Plaintiff's chiropractic records, Plaintiff's medication regimen, and Plaintiff's own reporting to his

10

doctors and a vocational rehabilitation counselor.[5] (R. 158-59). Additionally, the ALJ noted the record-based "multiple statements of claimant's work-related functional limitations," none of which indicated that Plaintiff suffered a disabling impairment and some of which clearly suggested he was okay to work.[6] *Id.* From all of this, the ALJ concluded Plaintiff was overstating his subjective complaints to the extent that he could not perform even a restricted range of light exertional work. As indicated above, under the "pain standard," an ALJ may reject in whole or in part the subjective evidence upon explicit and adequate findings. Here, the bald assertion by Plaintiff that the ALJ has failed to do so is simply belied by the decision. Upon my review of the medical evidence, the reasons set forth by the ALJ are adequately set forth and supported by the record. Plaintiff is not entitled to relief on this claim. There being no other issues raised by the Plaintiff, the decision of the ALJ is appropriately affirmed.

---

[5]As noted by the ALJ, Plaintiff's treating chiropractor opined on numerous occasions that Plaintiff was capable of performing light duty work (R. 101, 116-17, 251); no atrophy or muscle weakness was noted on examination in April 1991 (R. 92); a full range of motion in the lumbar spine was documented by an examining doctor in June 1992 and the doctor essentially found Plaintiff capable of light work with occasional postural activities (R. 104); Plaintiff told a vocational evaluator in November 1992 that he felt he was capable of performing light work (R. 113); only conservative treatment was recommended in a final chiropractic report of March 1996 (R. 208); and Plaintiff primarily took only non-prescription medication for pain. While Plaintiff correctly notes abnormal findings on a MRI of the lumbar spine in June 1994, *see* (R. 205), he received only conservative treatment thereafter, subsequent examinations did not reveal a disabling condition, and no doctors (treating or otherwise) opined that Plaintiff's physical limitations resulted in disability. *See, e.g.* (R. 207-09, 213-20, 249).

[6]Here, the absence of medical opinion evidence undercuts Plaintiff's subjective allegation that he is rendered disabled by pain.

11

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

                                                      Respectfully submitted this
                                                     24th day of February 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record